## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **RICHARD TURNLEY III, BARON H.C. FINLAYSON, COLEEN ALECIA HINDS, MARK-ANTHONY BROWN, TIMOTHY JOHNSON II, KHAIRI DWAYNE RAHMAN, RAHMEL HOBBS, and TERRY M. GRAVELY, on** behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) | **CIVIL ACTION NO. 07-CA10949 NG** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | |
| **BANC OF AMERICA INVESTMENT SERVICES, INC., and BANK OF AMERICA, N.A.,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
## OF THE MOTION FOR ATTORNEYS' FEES AND EXPENSES

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ...................................................................................... ii

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   HISTORY OF THE LITIGATION ................................................................. 3

III.  THE ATTORNEYS' FEES ARE FAIR AND REASONABLE ....................... 3

    A.    A Reasonable Percentage Of The Fund Recovered Is An
        Appropriate Approach To Awarding Attorneys' Fees In Common
        Fund Cases ............................................................................................ 3

    B.    A Fee Of 33 1/3%, Net Of Litigation Expenses, Is Reasonable ............ 3

    C.    The Requested Attorneys' Fees Are Less Than Half Of The
        Lodestar Value of Class Counsel's Services ....................................... 4

    D.    The Requested Fee Is Supported By The Named Plaintiffs'
        Retainer Agreements ............................................................................ 6

    E.    Other Factors Considered By Courts In The First Circuit Confirm
        That The Requested Fee Is Fair And Reasonable ................................ 7

        1.    The Time Devoted To The Litigation ........................................ 7

        2.    The Risk That The Litigation Will Be Unsuccessful ................. 8

        3.    The Extent Of The Benefit Obtained ........................................ 9

        4.    The Favorable Reaction Of The Class Members ...................... 12

        5.    The Skill And Efficiency Of Class Counsel ............................ 13

        6.    The Complexity And Duration Of The Litigation .................... 14

IV.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE
    NECESSARILY INCURRED TO ACHIEVE THE BENEFIT
    OBTAINED FOR THE CLASS ...................................................................... 15

V.    CONCLUSION .......................................................................................... 17

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*In re Automotive Refinishing Paint Antitrust Litig.,*
    2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ...............................................................5

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980)........................................................................................3

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ...........................................................................16

*E.E.O.C. v. Fairbault Foods, Inc.,*
    2008 WL 879999 (D. Minn. Mar. 28, 2008) ...........................................................4

*In re Fidelity/Micron Sec. Litig,*
    167 F.3d 735 (1st Cir. 1999).............................................................................15

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) .......................................................................3, 16

*Gottlieb v. Wiles,*
    150 F.R.D. 174, 186 (D. Colo. 1993) ..................................................................16

*Hainey v. Parrott,*
    617 F. Supp. 2d 668 (S.D. Ohio 2007) ..................................................................6

*Harman v. Lyphomed, Inc.,*
    945 F.2d 969 (7th Cir. 1991) ...........................................................................3

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.,*
    56 F.3d 295, 305 (1st Cir. 1995).........................................................................3

*In re Lupron Mktg. and Sales Practices Litig.,*
    2005 WL 2006833 (D. Mass. Aug. 17, 2005) ............................................... passim

*Mazola v. May Dept. Stores Co.,*
    1999 WL 1261312 (D. Mass. Jan. 27, 1999) (Gertner, J.)...........................................4

*In re Media Vision Tech. Sec. Litig.,*
    913 F. Supp. 1362 (N.D. Cal. 1996) ...................................................................16

*Missouri v. Jenkins,*
    491 U.S. 274 (1989).......................................................................................5

*Nelson vs. Wal-Mart Stores, Inc.,*
    2009 WL 2486888 (E.D. Ark. Aug. 12, 2009) ............................................4, 6, 11

*In re NTL, Inc. Sec. Litig.,*
    2007 WL 623808 (S.D.N.Y. Mar. 1, 2007) ...........................................................6

*In re Omnivision Techs., Inc.,*
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................................................9

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ...................................................................................3

*Pavlidis v. New Eng. Patriots Football Club, Inc.,*
  675 F. Supp. 707 (D. Mass. 1987) ....................................................................4, 5, 6

*Rawlings v. Prudential-Bache Props.*,
  9 F.3d 513 (6th Cir. 1993) .......................................................................................3

*In re Relafen Antitrust Litig.,*
  231 F.R.D. 52 (D. Mass. 2005)...........................................................................4, 6, 7

*In re TJX Cos. Retail Sec. Breach Litig.,*
  584 F. Supp. 2d 395 (D. Mass. 2008) ...............................................................6, 7, 12

*Turnley v. Banc of Am. Inv. Servs., Inc.,*
  576 F. Supp. 2d 204 (D. Mass. 2008) ......................................................................8

*In re Tyco Int'l, Ltd.*,
  535 F. Supp. 2d 249 (D.N.H. 2007)................................................................. passim

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,*
  724 F. Supp. 160 (S.D.N.Y. 1989).............................................................................5

Pursuant to the Court's Order Preliminarily Approving Settlement, dated July 15, 2009 ("Preliminary Approval Order," Document #134), Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Major Khan LLC (collectively herein, "Class Counsel"), respectfully submit this motion for entry of an order awarding attorneys' fees and expenses out of the common settlement fund, relating to the prosecution of the claims on behalf of Named Plaintiffs Richard Turnley III, Baron H.C. Finlayson, Coleen Alecia Hinds, Mark-Anthony Brown, Timothy Johnson II, Khairi Dwayne Rahman, Rahmel Hobbs and Terry M. Gravely ("Named Plaintiffs") and the Class in the above-titled action.[1]

## I.  **PRELIMINARY STATEMENT**

Named Plaintiffs and Class Counsel have succeeded in reaching a proposed Settlement that will resolve all claims asserted in this action against Defendants Banc of America Investment Services, Inc. and Bank of America, N.A. ("Defendants" or the "Bank") for payment of $7.2 million, in cash, plus accrued interest, and certain Programmatic Relief.[2]  The Settlement is an outstanding result, particularly in light of the tremendous risks faced by the Class in this case.  Indeed, the Settlement represents a significant percentage – nearly sixty percent – of the Class' likely maximum recoverable damages, as determined by Plaintiffs' expert.

As explained in the accompanying Declaration Of Steven B. Singer ("Singer Decl."), the Settlement was achieved only after Class Counsel had actively litigated the case for over two years since its commencement in 2007.  The work performed by Class Counsel was extensive.

---

[1] The Court's Preliminary Approval Order granted certification of the following Class for settlement purposes: All African Americans employed as Financial Advisors or Premier Client Managers in the Premier Banking & Investments division of Bank of America at any time between April 1, 2003, and March 24, 2009.

[2] The specific Programmatic Relief is set forth in Section VII of the Settlement Agreement attached as Exhibit 2 to the Joint Motion For (1) Preliminary Approval Of Class Action Settlement, (2) Certification Of Class, (3) Approval Of Notice Of Settlement, And (4) Approval Of A Schedule For The Final Settlement Approval Process, previously filed on July 2, 2009 ("Joint Motion," Document #131).

Their efforts included: (i) drafting the original and multiple amended complaints; (ii) briefing repeated motions to dismiss and motions for transfer and protective orders; (iii) propounding and responding to interrogatories and document requests; (iv) reviewing approximately two million pages of documents; (vi) taking nine depositions of Bank employees; (vii) consulting with experts; and (viii) drafting a mediation statement and preparing and participating in mediation sessions before an experienced mediator. *See* Singer Decl. ¶¶4-6.

The prosecution of the action was undertaken by Class Counsel on an entirely contingent basis. In fulfilling their duties and obligations as Class Counsel over the past two years, Class Counsel incurred $341,438.14 in out-of-pocket expenses and expended 14,182 hours – for a total lodestar of $5,108,883.75 – in time and expense that would not be compensated or reimbursed unless and until Class Counsel achieved a recovery for the benefit of the Class. The 33 1/3% fee requested would result in Class Counsel recovering less than half of Class Counsel's total lodestar; that is, the fee request, if awarded, would pay Class Counsel *significantly less* than their lodestar.

The Court-approved Notice of the Settlement, Plan of Allocation, and attorneys' fees and expense application was sent through direct mailing to the 514 Class Members. *See* Declaration of Jonathan Paul ("Paul Decl."), attached as Exhibit A to Singer Decl., at ¶¶10-11. The Notice informed Class Members that Class Counsel would seek 33 1/3% of the net Settlement Fund as attorneys' fees and up to $500,000 in litigation expenses, plus interest. It further informed Class Members that the requested fee is pursuant to the contingency fee agreements executed by each of the Named Plaintiffs during the commencement of their involvement in the case. *See* Class Notice, Ex. B to Singer Decl. The deadline for Class Members to object to the Settlement and/or Class Counsel's fee and expense application expired on September 18, 2009. Notably, not a single Class Member has objected to Class Counsel's fee and expense application. *See* Paul Decl. ¶15.

## II.     HISTORY OF THE LITIGATION

Class Counsel respectfully refers the Court to the accompanying Singer Declaration for a description of the procedural history of the litigation, the claims asserted, the investigation and discovery undertaken, the negotiation and substance of the Settlement, and the substantial risks and uncertainties of the litigation.

## III.     THE ATTORNEYS' FEES ARE FAIR AND REASONABLE

### A.     A Reasonable Percentage Of The Fund Recovered Is An Appropriate Approach To Awarding Attorneys' Fees In Common Fund Cases

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).

Numerous Circuit Courts of Appeal, including the First Circuit, have held that the percentage method is the appropriate method for awarding attorneys' fees in common fund cases. *See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 973 (7th Cir. 1991); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *see also In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007) ("An attorney who recovers a common fund for the benefit of others is entitled to 'a reasonable attorney's fee from the fund as a whole.'") (citing *Boeing,* 444 U.S. at 478). The percentage of fund method is appropriate in common fund cases because it "rewards counsel for success and penalizes it [counsel] for failure." *Tyco*, 535 F. Supp. 2d at 265 (citations omitted).

### B.     A Fee Of 33 1/3%, Net Of Litigation Expenses, Is Reasonable

After the decision is made to utilize the percentage of fund approach, courts must determine what percentage to apply in calculating the appropriate fee. As recognized by this

Court, "in this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions." *Mazola v. May Dept. Stores Co.*, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) (Gertner, J.); *see also Pavlidis v. New Eng. Patriots Football Club, Inc.,* 675 F. Supp. 707, 710 (D. Mass. 1987) ("Fees in the 20%-50% range in common fund class actions are not uncommon and have been held to be reasonable.") (citation omitted).

Here, the Settlement Agreement contemplates that Class Counsel may request attorneys' fees up to 33 1/3% of the net Settlement Fund, to be paid out of the Settlement Fund. *See* Settlement Agreement, Sections XI. and III.C. Class Counsel requests that the Court approve of attorneys' fees in an amount equal to 33 1/3% of the value of the monetary portion of the net Settlement Fund only, which does not take into account the value of the Programmatic Relief. The percentage requested is in line with the attorneys' fee awards in recent employment discrimination and other common fund cases within this District. *See Nelson vs. Wal-Mart Stores, Inc*., 2009 WL 2486888, at *2 (E.D. Ark. Aug. 12, 2009) (attorneys' fees of 33 1/3% approved in race discrimination case); *E.E.O.C. v. Fairbault Foods, Inc*., 2008 WL 879999, at n.6 (D. Minn. Mar. 28, 2008) (attorneys' fees of 30% of settlement fund approved in race discrimination case); *see also In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 79 (D. Mass. 2005) (award equal to 1/3 of settlement fund approved by court as reasonable); *In re Lupron Mktg. and Sales Practices Litig.,* 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005) (approving percentage of fund attorney fee award of 30% of settlement fund).

### C.    The Requested Attorneys' Fees Are Less Than Half Of The Lodestar Value of Class Counsel's Services

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, courts within the First Circuit may cross-check the proposed award against counsel's lodestar. *See Tyco*, 535 F. Supp. 2d at 265. As has been recognized within this District, however, because

the fee is requested on a percentage-of-the-fund basis, and is to be paid out of the common fund, the Court need not expend the time and resources to review lengthy detailed time records. *See Pavlidis,* 675 F. Supp. at 711.

The lodestar multiplier is intended to appropriately compensate counsel for the risk assumed in litigating the cases. *See Tyco,* 535 F. Supp. 2d at 271. Consequently, in cases where the risk of an adverse result is higher, the multiplier should be higher. *Id.* A "relatively low lodestar multiplier in [a] case is a good indication that the proposed award is not excessive." *Id.*

Here, the total lodestar of Class Counsel, derived by multiplying their hours by their current hourly rates of attorneys, paralegals, and other support staff, amounts to $5,108,883.75. [3] Accordingly, the requested 33 1/3% fee (net of the requested $341,438.14 in litigation expenses) amounts to $2,285,958.67 in requested fees, representing less than 45% of Class Counsel's lodestar amount. Further, Class Counsel's lodestar does not account for the additional time that will be required of Class Counsel to oversee the claims administration process and the distribution of the net Settlement Fund to Class Members. *See* Singer Decl. ¶¶64-67.

Thus, the 33 1/3% fee requested by Class Counsel is ***far less than a straight lodestar calculation***, and includes *no multiplier*, meaning that Class Counsel's fee request amounts to substantially *less* than their straight time, without any enhancement. As recently recognized in the common settlement fund context, "[s]ince the multiplier is less than 1 (a 'negative lodestar') and the requested fee is less than the amount that would be awarded using the lodestar method," "a lodestar cross-check confirms that the requested fee percent is fair and reasonable." *In re Automotive Refinishing Paint Antitrust Litig.,* 2008 WL 63269, at *6 (E.D. Pa. Jan. 3, 2008)

---

[3]   The Supreme Court has approved the use of current rates in the lodestar calculation to compensate for the delay in receiving compensation, inflationary losses, and the loss of interest. *See Missouri v. Jenkins,* 491 U.S. 274, 284 (1989); *see also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,* 724 F. Supp. 160, 163 (S.D.N.Y. 1989).

(citing *In re NTL, Inc. Sec. Litig.,* 2007 WL 623808, at *8 (S.D.N.Y. Mar. 1, 2007) (noting that fee awards based on negative lodestars are fair and reasonable)).

Indeed, courts have routinely held that multipliers that are far greater are also fair and reasonable.  *See Wal-Mart Stores*, 2009 WL 2486888, at *2 (33 1/3% award, resulting in 2.5 multiplier approved in race discrimination case); *Relafen,* 231 F.R.D. 52, 79 (award equal to 33 1/3% of settlement fund approved by court as reasonable, resulting in 2.02 multiplier); *In re TJX Cos. Retail Sec. Breach Litig.,* 584 F. Supp. 2d 395, 408 (D. Mass. 2008) ("[T]he suggested multiplier of 1.97 is within the range that has been recognized as reasonable.") (citing *Tyco*, 535 F. Supp. 2d at 271 (applying lodestar multiplier of 2.697); *Relafen*, 231 F.R.D. at 82 (award equal to 33 1/3% of settlement fund approved by court as reasonable, resulting in 2.02 multiplier).

### D.    The Requested Fee Is Supported By The Named Plaintiffs' Retainer Agreements

Courts within the First Circuit have confirmed that contingency fee agreements signed by the named plaintiffs may be binding upon the Class, especially where there are no objections raised by Class Members.  *See, e.g., Pavlidis*, 675 F. Supp. at 711 (contingency fee agreements signed by named plaintiffs equal to 26% of common fund enforced by the court for the entire class); *see also Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) (33 1/3% fee award in class action granted based on contingency agreement signed by class representatives).

Here, at the time they entered the case, each of the Named Plaintiffs signed a contingency fee agreement providing for the 33 1/3% award now requested by Class Counsel.  *See* Singer Decl. ¶65.  The Notice sent to the Class Members disclosed that the "fee is the fee set forth in the retainer agreements which Class Counsel has entered into with each of the Named Plaintiffs." Following direct Notice, no Class Member has objected.  The retainer agreements, without objection, further support the requested fee.  *Pavlidis*, 675 F. Supp. at 711.

**E.    Other Factors Considered By Courts In The First Circuit
Confirm That The Requested Fee Is Fair And Reasonable**

The ultimate task for this Court in awarding attorneys' fees is to ensure that Class Counsel is fairly compensated for the work they performed and the results they achieved. Courts within the First Circuit consider a variety of factors, including most commonly: "(1) the reaction of the class members to the settlement and proposed attorneys' fees; (2) the skill and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risk that the litigation will be unsuccessful; (5) the amount of time devoted to the case by counsel, and (6) the extent of the benefit obtained" or results achieved. *TJX*, 584 F. Supp. 2d at 401 (citing *Relafen*, 231 F.R.D. at 79 (award equal to 1/3 of common fund approved by court as reasonable)). As discussed below, application of these factors confirms that the requested fee is justified.

**1.    The Time Devoted To The Litigation**

As noted above, by the time the Settlement was reached – two years after the action was commenced – Class Counsel had completed a significant amount of work in vigorously prosecuting the litigation. These efforts included, but were not limited to: (i) drafting the original and multiple amended complaints; (ii) briefing the motions to dismiss and motions for transfer and protective orders; (iii) propounding and responding to interrogatories and document requests; (iv) reviewing approximately two million pages of documents and databases containing the Bank's employment-related data; (vi) taking nine depositions; (vii) consulting with experts; and (viii) drafting a mediation statement and preparing and participating in mediation sessions. *See* Singer Decl. ¶69.

Class Counsel received no compensation during the course of this litigation and, as noted above, invested $5,108,883.75 in time, and incurred $341,438.14 in expenses in obtaining the Settlement for the benefit of the Class. In addition to the advancement of costs, lawyers working on the case have forgone the business opportunity to devote time to other cases. Any fee award

has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses.

### 2.    The Risk That The Litigation Will Be Unsuccessful

Risk that further litigation might result in plaintiffs (and their contingency fee counsel) not recovering at all is an important factor in determining a fair fee award. "Many cases recognize the risk assumed by an attorney is 'perhaps the foremost factor' in determining an appropriate fee award." *Lupron*, 2005 WL 2006833, at *4 (citations omitted).

Here, the risks of no recovery were heightened by the nature of the action and the defenses available to Defendants. For example, Class Counsel recognized that obtaining class certification would be difficult. Plaintiffs' claims were based largely on the Bank's policies and practices of decentralized decision-making at the local level with respect to, among other things, the territorial and partnership assignments of Class Members. The Bank argued in two rounds of motions to dismiss and transfer – and no doubt would have continued to argue – that it had no Company-wide policies or practices for assigning partnerships or territories. Thus, according to the Bank, the class could not be certified, but rather each individual class member had to pursue his or her own individual claim. *See, e.g., Turnley v. Banc of Am. Inv. Servs., Inc.,* 576 F. Supp. 2d 204, 209 (D. Mass. 2008) (summarizing the Bank's arguments). Indeed, the Court did not foreclose all possibility of a future transfer or separation of the class action into various individual actions prosecuted in numerous jurisdictions throughout the United States. *Id.* at 218 (noting that "it is unclear which aspects of plaintiffs' claims, if any, will go forward as class claims and which will proceed individually," and indicating that the Court may "revisit the issue once the matter of class certification has been resolved").

As indicated by the Court, even assuming Class Counsel were successful in obtaining class certification, they faced a significant risk that not all of the asserted claims would survive as class claims, or at all. For example, Class Counsel recognized that proving liability under a

disparate treatment theory on a class-wide basis would be difficult, as the claims were not based on overt discrimination.  As a result, the Bank would have likely argued that there is no liability under a theory of disparate treatment, and thus, according to the Bank, the Section 1981 claim must be dismissed.  *See* Singer Decl. ¶¶33-35.

Class Counsel also understood that it would be difficult to establish a disparate impact claim.  Defendants would have presented expert testimony that the Bank's policies had no disparate impact and that African American employees were not disadvantaged under the Bank's system.  *Id.* ¶35.

Class Counsel also faced the risk that certain types of damages would not be recoverable, or for only limited time periods.  For example, the Bank would likely argue that Title VII limited back pay to two years, and punitive damages would not be recoverable at all.  Had Defendants been successful in limiting the claims to two years, based on Plaintiffs' expert's analysis the damages could be less than $8 million.  *Id.* ¶36.  Moreover, "[h]istory is replete with cases in which plaintiffs prevailed at a trial on issues of liability, but recovered little or nothing by way of damages." *Lupron*, 2005 WL 2006833, at *4 (cataloging cases in which nominal damages or no recovery was awarded after appeal).

These risks to obtaining class certification, establishing liability, and obtaining damages, while significant, were obviated by reaching the Settlement how and when Plaintiffs and Class Counsel did.  Class Counsel achieved a $7.2 million recovery and negotiated significant Programmatic Relief for the Class in the face of these very substantial risks.   Under these circumstances, the requested fee is fully justified.

### 3.    The Extent Of The Benefit Obtained

Courts have consistently recognized that the settlement achieved is a major – and perhaps the most important – factor considered in determining an appropriate fee award.  *See In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).   Through vigorous

prosecution and settlement negotiations, and in the face of tremendous risks, Class Counsel has succeeded in obtaining a Settlement Fund of $7.2 million cash plus significant Programmatic Relief.

As discussed in the Singer Declaration, Plaintiffs' statistics expert calculated the likely recoverable damages in the form of back pay – if Plaintiffs had succeeded at trial on all claims – in the total amount of approximately $12 million. The expert reviewed actual compensation data for all Financial Advisors and Client Managers during the Class Period. He performed a linear regression analysis and predicted deviations of observed (African American) values from predicted (Caucasian) values.[4]   Based on Plaintiffs' experts' analysis, the Settlement Fund achieved by Class Counsel constitutes sixty percent of the likely maximum recoverable damages. *See* Singer Decl. ¶48.

As detailed in the Class Notice, the recovery amounts to an average of over $14,000 per Class Member before deduction of Court-awarded fees and expenses. Plaintiffs' statistical expert has calculated that, under the proposed Plan of Allocation, if the Court approves of the anticipated requests for an award of attorneys' fees and expenses and Service Awards for the Named Plaintiffs, the estimated average recovery for each Class Member who was a Financial Advisor will be approximately $19,000, and the estimated average recovery for each Class Member who was a Client Manager will be approximately $5,000.

In addition to the monetary relief, Class Counsel obtained significant Programmatic Relief.   As courts have recognized, particularly in race discrimination class actions,

---

[4] Specifically, the expert used only Caucasian data to create regressions which predicted Caucasian Financial Advisor and Client Manager income over time.  He then applied the two regression lines over time to African American Financial Advisors and Client Managers, respectively.  He then calculated the discrepancy between what African Americans actually earned and what the Caucasian line predicted they would have earned over time if they had been Caucasian.  The expert's analysis controls for (1) the job category of Financial Advisor or Client Manager; (2) the date of the pay period; and (3) length of service.  *See* Singer Decl. ¶¶38-39.

programmatic relief is "an important factor in considering the reasonableness of the attorneys' fees." *Wal-Mart*, 2009 WL 2486888, at *1.

Notwithstanding the issues created by Defendants' acquisition of Merrill Lynch & Co. (accompanied by Merrill Lynch's own procedures and policies governing its numerous financial advisors), as recommended by the Mediator, Class Counsel were able to obtain the Bank's agreement to relief in the following areas: communications, training, diversity monitoring, and the hiring of an independent Industrial Psychologist. *See* Singer Decl. ¶49. The agreed-upon Programmatic Relief is summarized as follows:

- The Bank will make available to employees within the Bank's PB&I division the Bank's Non-Discrimination and Anti-Harassment Policy and issue a statement in support of that policy.

- The Bank will provide training to certain PB&I employees, including Financial Advisors, Premier Client Managers, and their managers, regarding the Bank's Non-Discrimination and Anti-Harassment Policy.

- Within 30 days after final approval of the Settlement, the Bank will appoint an internal Diversity Monitor to oversee issues relating to diversity and inclusion within the Bank's Premier Banking & Investments division.

- Within one year after final approval of the Settlement, the Bank will appoint and pay for an external Industrial Psychologist to review certain Bank policies and procedures from the standpoint of diversity and inclusion.

As the Court recognized at the Preliminary Approval hearing, the Programmatic Relief does not *require* that the Bank implement the Industrial Psychologist's Recommendations. That is because the Bank would not agree to be bound by any (as yet, unknown) recommended changes in light of its recent acquisition of Merrill Lynch. The Merrill Lynch acquisition added a great deal of uncertainty with respect to what the Bank's policies and practices would be. Indeed, if the case had proceeded through litigation, the Bank would have likely argued that Plaintiffs were not entitled to *any* injunctive relief because Plaintiffs' primary complaints – the partnership and territorial assignment structure – would no longer be applicable. Despite the

uncertainties associated with the Merrill Lynch acquisition, Class Counsel insisted that some form of Programmatic Relief be implemented. Thus, pursuant to the Mediator's recommendation, Class Counsel was able to obtain the Bank's agreement to make changes in the four categories listed above, and to set up a collaborative process – including the appointment of both an internal Diversity Monitor and an outside Industrial Psychologist – for reviewing and improving upon the Bank's policies and practices. Class Counsel is confident that, as a result, issues and recommendations for improvement will, at a minimum, be brought to the attention of the Bank's management who are bound, in good faith, to consider whether and how to implement the Recommendations. Class Counsel also insisted – as is included in the Settlement Agreement – that it be informed as to as to which Recommendations the Bank will implement and which it will not. *Singer* Decl. ¶51.

Moreover, the expense and length of continued proceedings necessary to prosecute the litigation through dispositive motions, further discovery, trial and appeals would be substantial. Named Plaintiffs and Class Counsel carefully considered the likelihood of success against Defendants, the potential total damages that could be recovered against Defendants, as well as the uncertain outcome and risk of any litigation, especially in complex actions such as this, and the difficulties and delays inherent in such litigation. *See* Singer Decl. ¶¶33-37. Particularly in light of these circumstances, the amount obtained is a substantial achievement on behalf of the Class, and weighs in favor of granting the requested 33 1/3% fee.

### 4.    The Favorable Reaction Of The Class Members

The reaction of the class to a proposed settlement and fee request is another important factor in approving fees. *See TJX*, 584 F. Supp. 2d at 401; *Tyco*, 535 F. Supp. 2d at 269. Here, the Notice was directly sent to the 514 Class Members. *See* Paul Decl. ¶10. The Notice informed Class Members that Class Counsel will apply for attorneys' fees in the amount of 33 1/3% of the Settlement Fund, net of Court-approved reimbursement of litigation expenses, plus accrued

interest.  The Notice advised Class Members of their right to object to the Settlement, the Plan of Allocation or the request for attorneys' fees and expenses.  The deadline for filing any objections expired on September 18, 2009.  Notably, after direct notice, ***no member of the Class objected***. This factor further supports the requested award of 33 1/3% of the net Settlement Fund.

### 5.    The Skill And Efficiency Of Class Counsel

The First Circuit has acknowledged that public policy mandates granting to class counsel an attorneys' fee award that reflects the effort and skills displayed by counsel in obtaining the settlement.  *Tyco*, 535 F. Supp. 2d at 270; *Lupron*, 2005 WL 2006833, at *6.  "Without a fee that reflects the risk and effort involved in [the] litigation, future plaintiffs' attorneys might hesitate to be similarly aggressive and persistent when faced with a similarly complicated, risky case and similarly intransigent defendants."  *Tyco*, 535 F. Supp. 2d at 270.  This factor is especially important in cases of employment and racial discrimination in which there is a significant societal interest in redressing the discriminatory actions of the defendant.  *See Lupron*, 2005 WL 2006833, at *6.

Here, Class Counsel have many years of experience in litigating class actions and other complex litigation, including employment discrimination class actions throughout the country.[5] From the outset, Class Counsel engaged in a concerted effort to obtain the maximum recovery for the Class.  Class Counsel demonstrated that they would work to develop sufficient evidence to support a convincing case.  Through Class Counsel's persistent and skillful work, they were able to plead detailed allegations supporting class-wide claims and venue, and defeat Defendants in two rounds of motions to dismiss and transfer.  Class Counsel conducted a sophisticated and extensive investigation into the claims asserted in the Complaint, including but not limited to, multiple depositions and interviews, review of the extensive document production, and

---

[5]  *See* Firm Resume of BLB&G, attached as Ex. C to the Singer Declaration.

consultation with experts.  The fact that Class Counsel have demonstrated a willingness and ability to prosecute complex cases such as this throughout trial and appeals was undoubtedly a factor that encouraged Defendants to engage in settlement discussions, and added valuable leverage in the negotiations, ultimately resulting in the recovery for the Class.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Class Counsel.  Throughout the litigation and settlement negotiations, Defendants have been represented by experienced counsel from the prominent law firms of Bingham McCutchen LLP and Covington & Burling LLP.  Their representation of the Defendants was no less rigorous than Class Counsel's representation of the Class.  Thus, the fact that Class Counsel achieved this Settlement for the Class in the face of formidable legal opposition further evidences the quality of their work.

### 6.    The Complexity And Duration Of The Litigation

The Settlement was achieved only after the parties had been actively engaged in hard-fought litigation for over two years.  As evidenced by the extent of discovery, the facts were difficult to ascertain and key documents and databases were solely in the possession of Defendants.  Class Counsel engaged the services of a statistics expert and sociology expert, both with extensive experience in employment discrimination litigation, to analyze the claims of racial discrimination and Defendants' corporate culture and policies and substantial statistical data (including compensation, employment, performance, and demographic information) regarding Financial Advisors and Premier Client Managers during the Class Period.

Throughout the litigation, Defendants advanced sophisticated arguments for dismissal of the claims and proposed transfer and scattering of the action into individual cases that would be tried in various jurisdictions throughout the United States. Due to their skill and diligence in complex class action litigation, Class Counsel were successful in defeating two rounds of transfer and dismissal motions filed by the Defendants. Defendants would most likely renew

their efforts to sever the cases and reduce the Class' possibility of recovery for the alleged systemic racial discrimination.

Defendants specifically denied – and continue to deny – the allegations that the Bank unlawfully discriminated against the Named Plaintiffs or other Class Members on the basis of race or color, and the Class' entitlement to relief. Class Counsel and the Named Plaintiffs believe that the claims asserted in this action have merit and that the evidence developed to date supports those claims. Due to unique defenses available in race and employment discrimination cases, fact discovery was complicated and motions to compel were necessary. These obstacles increased the complexity of the case. Nevertheless, Class Counsel, with the assistance of their statistics and sociology experts, succeeded in compiling the data and presenting sufficient facts to this Court to overcome multiple motions for dismissal and to obtain a substantial settlement for the Class.

### IV. CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED FOR THE CLASS

As contemplated by the Settlement Agreement, Class Counsel also request that the Court grant their application for $341,438.14 in costs in connection with the prosecution of this litigation, to be paid out of the Settlement Fund. It is well-settled that "lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax." *Lupron*, 2005 WL 2006833, at *2 (quoting *In re Fidelity/Micron Sec. Litig*, 167 F.3d 735, 737 (1st Cir. 1999)). "[B]ecause each common fund case presents its own unique set of circumstances, trial courts must assess each request for fees and expenses on its own terms." *Fidelity*, 167 F.3d at 737.

The expenses which Class Counsel seek are the type of expenses routinely charged to hourly paying clients. For example, included in the amount of expenses is $136,140.00 paid or

payable to Named Plaintiffs' statistics and sociologist experts. The experts provided Class Counsel with substantial assistance in connection with the development, prosecution and settlement of the action. *See* Singer Decl. ¶84. The statistics expert not only calculated the Class' estimated damages as discussed above, but also assisted in the creation of the Plan of Allocation, and calculated the amounts to be utilized by the Claims Administrator in distributing the net Settlement Fund pursuant to the Plan of Allocation. Plaintiffs' sociology expert, who is highly experienced in discrimination cases, among other tasks, reviewed and advised Class Counsel regarding the Bank's internal documents and the proposed and agreed-upon Programmatic Relief. *Id.*

The expenses also include the costs of on-line research in the amount of $81,860.93. These are the actual charges for computerized factual and legal research services such as *Lexis-Nexis* and *Westlaw*. *Id.* ¶85. It is standard practice for attorneys to use *Lexis-Nexis* and *Westlaw* to assist them in researching legal and factual issues. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1371 (N.D. Cal. 1996). Indeed, courts recognize that these tools create efficiencies in litigation and, ultimately, save clients and the class money. *See, e.g., In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). In approving expenses for computerized research, the court in *Gottlieb v. Wiles* underscored the time-saving attributes of computerized research as a reason reimbursement should be encouraged. 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd and remanded on other grounds sub nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994).

In addition, Class Counsel received a substantial volume of documents produced by the Bank during the course of the litigation. Management and duplication of many of these documents, as well as the court documents and other publicly-available documents, was necessary for the effective prosecution of the case. Included in the expense request is $19,462.00, for reimbursement of internal copying costs, $9,672.35, for reimbursement of

external copying costs, and $2,994.16 in document management/litigation support costs. *See* Singer Decl. ¶86.

In addition, Class Counsel were required to travel in connection with prosecuting the action – including for the motion to dismiss hearing, motion for protective order hearing, depositions, mediation, meeting with clients, and the preliminary approval hearing – and thus incurred the related costs of airline tickets, meals and lodging. Included in the expense request is $17,247.01, for travel expenses necessarily incurred for the prosecution of this litigation. The expenses in this category are reasonable in amount, and are properly charged against the common fund created.[6]

And finally, the Court-approved Notice directly mailed to the Class Members informed them that Class Counsel intended to seek out of the Settlement Fund reimbursement for expenses incurred in the prosecution of the litigation not to exceed $500,000. The amount of expenses now sought – $341,438.14 – is significantly less than the amount stated in the Notice. The deadline for objecting to the fee and expense application expired on September 18, 2009. Notably, no Class Member objected.

## V.    CONCLUSION

From the beginning of this litigation, Class Counsel have faced determined adversaries represented by experienced counsel. With no assurance of success, Class Counsel pursued the action, and successfully obtained a $7.2 million Settlement that has accrued interest to the benefit of the Class. Additionally, Class Counsel obtained significant Programmatic Relief to enhance

---

[6]   *Id.* ¶87.   In addition to Class Counsel's lodestar and expenses, local counsel, Messing, Rudavsky & Weliky, P.C. performed work at the direction of Class Counsel and incurred expenses, for which it was regularly reimbursed by Class Counsel. Class Counsel does not seek reimbursement for the fees it paid to local counsel, but does seek reimbursement from the Settlement Fund for the amount paid to local counsel for reimbursement of its expenses ($661.86). *See id.* ¶88.

opportunities for employment, earnings and advancement of African American Financial Advisors and Premier Client Managers.  The Settlement reflects Class Counsel's efforts in the face of significant risk.  Accordingly, Class Counsel respectfully submit that the Court should approve the fee and expense application and enter the proposed Order submitted herewith awarding Class Counsel 33 1/3% of the net Settlement Fund, or $2,285,958.67, in fees, plus interest at the rate accrued by the Settlement Fund, and $341,438.14 in expenses, plus interest at the rate accrued by the Settlement Fund.

Dated:  October 9, 2009                     Respectfully submitted,

                                            BERNSTEIN LITOWITZ BERGER
                                              & GROSSMANN LLP

                                            By:    /s/ Steven B. Singer
                                                    Steven B. Singer

                                                Steven B. Singer (*pro hac vice*)
                                                Jeremy P. Robinson (*pro hac vice*)
                                                1285 Avenue of the Americas
                                                New York, NY 10019
                                                Tel:  (212) 554-1400
                                                Fax:  (212) 554-1444
                                                  -and-
                                                Niki L. Mendoza (*pro hac vice*)
                                                Matthew Jubenville (*pro hac vice*)
                                                12481 High Bluff Drive, Suite 300
                                                San Diego, CA 92130
                                                Tel:  (858) 793-0070
                                                Fax:  (858) 793-0323

                                                MAJOR KHAN LLC
                                                Major Khan
                                                20 Bellevue Terrace
                                                Weehawken, NJ 07086
                                                Tel:  (646) 546-5664
                                                Fax:  (646) 546-5755

                                                *Counsel for Named Plaintiffs Richard Turnley III, Baron H.C. Finlayson, Coleen Alecia Hinds, Mark-Anthony Brown, Timothy Johnson II, Khairi Dwayne Rahman, Rahmel Hobbs, and Terry M. Gravely and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2009, I caused the foregoing document to be served on

the parties named below by electronic mail and U.S. Mail:

Frances S. Cohen (BBO #542811)        Jeffrey G. Huvelle
Ralph C. Martin, II (BBO #322660)       Thomas S. Williamson, Jr.
Louis A. Rodriques (BBO #424720)      COVINGTON & BURLING LLP
BINGHAM MCCUTCHEN LLP             1201 Pennsylvania Avenue, N.W.
One Federal Street                          Washington, D.C.  20004-2401
Boston, MA  02110-1726


Dated: San Diego, California

October 9, 2009


                         _____*/s/ Niki L. Mendoza*_____
                         Niki L. Mendoza (*pro hac vice*)
                         Bernstein Litowitz Berger & Grossmann LLP